UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMANTHA A. EVES,

       Plaintiff,

v.                                                                                                Case No. 1:14-cv-1241
                                                                                                  Hon. Ray Kent
COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

# OPINION

       Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for Supplemental Security Income (SSI).

       Plaintiff was born in 1991. PageID.171. She completed the 10th grade and had previous employment as a housekeeper in a casino. PageID.176-177. Plaintiff alleged a disability onset date of October 30, 2009. PageID.171. Plaintiff identified her disabling conditions as a learning disability, fibromyalgia, endometriosis, bi-polar disorder, short term memory problems, and interstitial cystitis. PageID.175. An ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on July 24, 2013. PageID.47-58. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months. *See* 20 C.F.R. §416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since her SSI application date of June 8, 2012. PageID.49. At the second step, the ALJ found that plaintiff had severe impairments of fibromyalgia, mood disorder, depressive disorder, bipolar disorder, borderline intellectual function, anxiety disorder, intermittent explosive disorder, and impulse control disorder. *Id.* At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.50.

The ALJ decided at the fourth step that:

> [T]he claimant has the residual functional capacity to perform <u>light work</u> as defined in 20 CFR 416.967(b). She can lift 20 pounds occasionally and 10 pounds frequently. The claimant can sit for 6 hours during an 8-hour work period. She can stand for 6 hours during and 8-hour work period. The claimant must have the option to sit or stand at will. She can frequently climb ramps and stairs. The claimant can occasionally climb ladders, ropes, and scaffolds. She can occasionally balance and crawl. The claimant can frequently stoop, kneel, and crouch. She must avoid concentrated exposure to extreme cold, vibration, hazardous machinery, and unprotected heights. The claimant can perform simple, routine, repetitive tasks. She can interact with small familiar groups.

PageID.52 (emphasis in original). The ALJ also found that plaintiff has no past relevant work. PageID.57.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, light exertional jobs in the national economy. PageID.57-58. Specifically, the ALJ

4

found that plaintiff could perform the following unskilled, light work in Michigan and the nation: electrical accessories assembler (1,898 jobs in Michigan and 42,093 in the nation); hand packager (1,249 jobs in Michigan and 48,680 jobs in the nation); and, gate guard (1,037 jobs in Michigan and 95,573 jobs in the nation). PageID.57-58. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, since June 8, 2012, the date the application for SSI was filed. PageID.58.

### III. ANALYSIS

Plaintiff did not include a Statement of Errors as directed by the Court.[1] *See* Notice (docket no. 8). Upon reviewing the brief, the Court has gleaned the following claim for consideration on appeal:

> **The Commissioner erroneously failed to give appropriate weight to the opinions of plaintiff's treating physician, Richard Hodgman, M.D.**

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d

---

[1] Counsel is advised that failure to set forth a Statement of Errors as directed may result in non-conforming pleadings being stricken.

789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

The ALJ addressed Hodgman's opinion as follows:

> Richard Hodgman, M.D., the claimant's primary care doctor, opined that the claimant was limited to "less than a full range of sedentary work" due to fibromyalgia. He indicated many severe limitations such as the claimant needed to take an hour to walk a block. Dr. Hodgman indicated limitations such that the claimant would be unable to work any more than 4 hours of an 8-hour day (14F:5). If Dr. Hodgman's opinion would have been well supported it could have been given controlling weight. He had been the claimant's doctor since the claimant was a baby. The undersigned gave this opinion <u>little weight</u>. There were no medical tests to support this degree of limitation (x-rays, computer aided tomography, magnetic resonance imaging, etc.). In his other opinions, Dr. Hodgman said that the claimant was primarily limited by her mental problems, not fibromyalgia. Dr. Hodgman was not a fibromyalgia specialist (neurologist or rheumatologist). There was no evidence

>that he had referred the claimant to a fibromyalgia specialist. There were no neurological tests in the record such as electromyography to indicate overactive nerves. There was no evidence of joint inflammation or swelling. The claimant's clinical examinations, musculoskeletal and neurological, were grossly normal (7F). Moreover, the claimant admitted that she was able to throw objects in anger, punch holes in walls, and physically fight with her classmates. For these reasons, the undersigned gave Dr. Hodgman's opinions regarding the claimant's physical limitations little weight.
>
>Dr. Hodgman also made opinions regarding the claimant's mental capacity. On this form, Dr. Hodgman indicated the claimant was unable to meet competitive standards largely for memory (i.e. cognitive) problems (Oct 2012, 13F, and Jul 2013, 24F). Although Dr. Hodgman was not an "acceptable psychiatric source" (i.e., he was not a psychiatric doctor), the undersigned weighed the portions of Dr. Hodgman's opinions as coming from an "other source." Dr. Hodgman had reportedly treated the claimant since the claimant was an infant. Dr. Hodgman probably knew the claimant very well. The undersigned gave Dr. Hodgman's opinions regarding the claimant's mental capacity little weight. There was no evidence that the claimant had a learning disorder. Specifically, she received special education services as a child after she fell behind in school secondary to her emotional problems and absence. In addition, Dr. Hodgman's opinions were inconsistent with one another. On the portion of the form that addressed social limitations (i.e. secondary to emotional impairments), Dr. Hodgman indicated that work was not precluded. Dr. Hodgman indicated more serious problems in the "unskilled" area (13F:3) than he did in the "skilled" area in this assessment (13F:4). In addition, there was no support for Dr. Hodgman indicating that the claimant would miss more than 4 days of work per month. The claimant had a history of excessive absence as a child. However, there was no evidence of excessive absence as an adult (canceling medical appointments, etc.). The claimant was being relied upon as a babysitter.

PageID.56 (emphasis in original).

Plaintiff contends that the ALJ did not properly evaluate Dr. Hodgman's opinions with respect to both her physical and mental impairments by disregarding the doctor's nearly two decade history of treating her. Plaintiff has raised a valid point. The treating physician doctrine is based on the assumption that a medical professional who has treated a claimant over a long period time will have a detailed, longitudinal picture and a deeper insight into the claimant's medical condition. *See Barker*, 40 F.3d at 794; 20 C.F.R. § 416.927(c)(2). However, the treating physician's

opinion is not automatically accepted as controlling. The opinion must be well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record. *See Gayheart*, 710 F.3d at 375. Here, the ALJ outlined plaintiff's medical history in some detail. PageID.52-55. Plaintiff does not address any clinical, diagnostic or other evidence to demonstrate that Dr. Hodgman's opinion is entitled to more weight than the weight assigned by the ALJ. For these reasons, plaintiff's claim of error will be denied with respect to Dr. Hodgman's opinions regarding her physical impairments.

However, the ALJ erred in concluding that Dr. Hodgman was not an acceptable medical source with respect to plaintiff's mental impairment. It is well established that an ALJ can discount a psychologist's opinion about the claimant's physical functioning, because a psychologist is not qualified to diagnose a physical condition. *See Buxton*, 246 F.3d at 775. However, as an M.D. licensed to practice medicine in Michigan, Dr. Hodgman is qualified to treat both physical and mental conditions. *See Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (a duly licensed physician under the laws of most states, can practice and render psychiatric services, i.e., prescribe psychotropic medication, conduct psychotherapy, etc.); M.C.L. § 333.17001(f) ("'Practice of medicine' means the diagnosis, treatment, prevention, cure, or relieving of a human disease, ailment, defect, complaint, or other physical *or mental condition,* by attendance, advice, device, diagnostic test, or other means, or offering, undertaking, attempting to do, or holding oneself out as able to do, any of these acts") (emphasis added). "While the medical profession has standards which purport to restrict the practice of psychiatry to physicians who have completed residency training programs in psychiatry, it is well established that primary care physicians (those in family or general practice) 'identify and treat the majority of Americans' psychiatric disorders.'" *Sprague*, 812 F.2d at 1232.

Thus, for purposes of a disability claim, "[a] treating physician's opinion on the mental state of his patient constitutes competent medical evidence even though the physician is not a certified psychiatrist." *Bushor v. Commissioner of Social Security*, No. 1:09-cv-320, 2010 WL 2262337 at * 10, fn. 4 (S.D. Ohio April 15, 2010). *See also*, *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) (where a medical doctor treating a claimant for chronic pain expressed opinions regarding the claimant's mental restrictions, those opinions constituted "competent psychiatric evidence" and may not be discredited by an ALJ on the ground that the doctor is not a board certified psychiatrist).

For these reasons, the ALJ's decision is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate Dr. Hodgman's opinion with respect to plaintiff's mental condition.

### IV. CONCLUSION

Accordingly, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to re-evaluate Dr. Hodgman's opinion with respect to plaintiff's mental condition. A judgment consistent with this opinion will be issued forthwith.


Dated: March 25, 2016         /s/ Ray Kent
                              RAY KENT
                              United States Magistrate Judge